IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JET SYSTEMS, LLC<br>48015-1 Pine Hill Run Road<br>Lexington Park, Maryland 20653<br><br>　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>　　　Defendant. | Case No. _____ 24-1166 C |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff JET Systems, LLC, ("JET"), by and through its undersigned counsel, brings this Complaint against Defendant United States of America, by and through the U.S. Department of the Navy ("USN"), and states as follows:

### I.  INTRODUCTION

1.  This case arises out of concerted action by the Defendant United States of America, through the Naval Air Systems Command ("NAVAIR") of the U.S. Department of Navy, to copy Plaintiff's proprietary Adaptive Layer Framework ("ALF") software products and documentation without Plaintiff's permission, to use for its own purposes without compensating Plaintiff and causing Plaintiff harm.

2.  Plaintiff alleges herein that Defendant United States has infringed Plaintiff's registered copyright in its computer source code by unauthorized copying and distribution.

3.  This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

1

## II.     PARTIES

4. Plaintiff JET is a Maryland limited liability company with its principal place of business located at 48015-1 Pine Hill Road, Lexington Park, Maryland 20653. JET develops, maintains, and innovates systems for specific and common mission capabilities, combat aides, and surveillance systems. JET supports platforms related to Small Unmanned Aerial Vehicles ("SUAV"), Unmanned Aerial Vehicles ("UAV"), and manned vehicles for the Department of Defense ("DoD"), the National Aeronautics and Space Administration ("NASA"), the Department of the Army ("DoA"), and other Government agencies. JET provides solutions through cost-effective, tailored strategies to meet mission requirements to include both new software generation and certified software re-use. In turn, the Government utilizes JET to provide ongoing support activity or to prepare the customer to be a lead systems integrator. JET has developed its proprietary Adaptive Layer Framework ("ALF") software products and documentation.

5. Defendant United States of America, in this matter has acted by and through the U.S. Department of the Navy ("DoN"), Naval Air Systems Command ("NAVAIR"), which upon information and belief is headquartered in Patuxent River, Maryland with military and civilian personnel stationed at eight locations across the continental United States and one site overseas. According to its website, https://www.navair.navy.mil/organization/NAVAIR, accessed on July 25, 2024, NAVAIR delivers integrated air warfare capabilities to enable the fleet to compete, deter, and win – tonight, tomorrow and in the future.

## III.     JURISDICTION AND VENUE

6. This is an action arising under the Copyright Act, 17 U.S.C., § 501.

7.     This Court has exclusive subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1491, 1498(b).

8.     28 U.S.C. § 1498(b) provides the Government's limited waiver of sovereign immunity for copyright suits against the United States.

### IV.    FACTS

9.     The DoN has had a continuing interest in Plaintiff's Adaptive Layer Framework products. The term Adaptive Layer Framework is known by DoN and throughout the industry to refer to Plaintiff's products. The DoN even wrote ALF into its Core Avionics Master Plan 2020 ("CAMP"), attached as Exhibit 1. See CAMP at Appendix A-1, page 10: under

> 2.  Funded Enhancements and Potential Pursuits - "Open Architecture Middleware Interface to Operational Flight Profile (OFP) - Adaptive Layer Framework (ALF) (2022)]."

The description included the statements that "OPNAV has funded PMA-209 to generate such middleware to enable more efficient utilization of legacy platform OFP code and software applications," and "the first development effort will result in the generation of modules that can simplify and reduce the cost of similar middleware development efforts and implementation of developed software on other platforms."

10.    As part of J.F. Taylor, Inc. ("JFTI")'s contract with the Department of Navy ("DoN") to design, develop, build, and test prototype computers for the NAVAIR PMA-209 Air Combat Electronics Program Office ("PMA-209") Mission Computer Adjunct Processor ("MCAP") Program, DoN asked JFTI to issue a purchase order to JET for JET's proprietary Baseline ALF software products and documentation.

11.     JFTI issued the Request for Quote, a copy of which is attached as Exhibit A hereto.

12.     JET responded with a Quote, a copy of which is attached as Exhibit B hereto.

13.     JFTI accepted JET's bid and issued Purchase Order ("P.O. 309975"), a copy of which is attached as Exhibit C hereto.

14.     P.O. 309975 was issued pursuant to Standard Terms and Conditions ("ST&C") appearing on JFTI's website. A copy of the ST&C is attached as Exhibit D hereto.

15.     The ST&C, Paragraph 28, summarizes the applicable DFARS/FAR Clauses for all procurements, included among which is DFARS 252.227-7014 (Rights in Noncommercial Computer Software and Noncommercial Computer Software Documentation).

16.     DFARS 252.227-7014 applies to P.O. 309975 because JET's proprietary Baseline ALF software products and documentation are not "commercial computer software" as defined in Sections (a)(1) and (5) of the DFARS.

17.      Had the contract gone forward, the Government might have rights in the delivered software and the documentation pursuant to DFARS 252.227-7014(b)(3), but the contract did not go forward when the Government breached its contract with JFTI in which Plaintiff was a third-party beneficiary and when JFTI canceled P.O. 309975.

18.     P.O. 309975 required delivery of the software and documentation on or before September 11, 2022.

19.     The only contract by and between Plaintiff and JFTI is set forth in the items discussed above and attached as Exhibits A-D hereto. There are no other written

4

agreements by and between JET and JFTI with regard to the legal defined deliverables as delineated in the Request for Quotation, Quote, and P.O. 309975.

20.     On or about September 9, 2022, after discussions with the Government, JET delivered a copy of its source code and documentation directly to the Government.

21.     On or about September 22, 2022, by his signature, Kevin Pilkerton of PMA-209/Multi-Use Laboratory Environment ("MULE") signed for receipt of a DVD comprising ALF PowerPC 653 Supplemental Software. On September 26, 2022, Kevin Pilkerton signed for receipt of a DVD comprising ALF PowerPC 653 Test Cases. Copies of the two signed receipts are attached as Exhibit E.

22.     On or about September 27, 2022, Matt Campbell of JFTI sent an email to Scott Jaster of JET, relaying to JET a request from the Government to amend P.O.309975 to include delivery of products and services not included in P.O. 309975 (ALF Core, SDK, and support to MULE), in exchange for "a 50% payment for what you have delivered so far." A copy of the September 27, 2022, email from Matt Campbell is attached as Exhibit F. Given that JET had already fully met its obligations under P.O. 309975, JET did not accept the coercive offer from JFTI and the Government.

23.     In a text message exchange on October 18, 2022, between Scott Jaster of JET and Jeff Williamson of PMA-209/MULE while the Government was withholding payment on P.O. 309975, Williamson states " I worked to get you 50% you did[n't] take it." After Scott Jaster explains that JET has satisfied its obligations under P.O. 309975, Williamson responds "It's out of my hands." A copy of the October 18, 2022, text message exchange is attached as Exhibit G.

24. On or about November 10, 2022, the Government sent a Letter of Concern to JFTI falsely claiming that the delivered software was incomplete and requesting a response by close of business on November 18, 2022, as to how JFTI intended to remedy the content of the deliverable. A copy of the Government's Letter of Concern is attached as Exhibit H hereto.

25. JFTI then sent a letter to JET dated November 14, 2022, informing JET that it considered JET to be in breach of P.O. 309975 based on the Government's Letter of Concern and provided JET until 12:00 noon on Wednesday November 23, 2022, to complete performance and cure its alleged breach. A copy of JFTI's November 14, 2002, letter is attached as Exhibit I hereto.

26. JET denied any breach and commenced negotiations, but JFTI failed to acknowledge that JET had complied with the terms and conditions of the purchase order. By letter dated December 9, 2022, JFTI notified JET that P.O. 309975 was terminated for cause. A copy of JFTI's December 9, 2022, letter is attached as Exhibit J hereto.

27. JFTI made no payments to JET under the purchase order, which was wrongfully terminated.

28. JET has registered its copyright in the software code for its proprietary Adaptive Layer Framework software (Registration Number TX 9-384-065).

29. On or about February 27, 2023, JFTI returned to JET a Compact Disk containing the delivered software and documentation. However, before returning the software, upon information and belief, and as shown below, JFTI and the Government made

unauthorized copies in violation of JET's registered copyright in the software, constituting copyright infringement and conversion by the Government.[1]

30. On or about 12:30 p.m. December 5, 2022, a telephone conference was held between Scott Jaster of JET; and Wayne Taylor, Matt Campbell, Natalie Morris, and Tammy Sparks, all of JFTI. A copy of the conference call notice sent by Matt Campbell of JFTI is attached as Exhibit K. On information and belief, the conference call notice was sent to all named conference call participants.

31. During the December 5, 2022, conference call, JFTI personnel admitted that they evaluated the ALF software that JET had delivered to the Government. This admission is memorialized in the email sent from Scott Jaster to Tammy Sparks of JFTI on Wednesday, December 14, 2022, at 10:22 AM ("It was stated in the last phone call meeting that JFTI reviewed and assessed the delivered products, and that they "agree" with the Government's assessment.") The same admission was again memorialized in an email from Scott Jaster to Tammy Sparks on December 15, 2022 at 11:11 AM. Copies of the December 14, 2022 and December 15, 2022 emails are attached as Exhibit L.

32. In an email sent September 28, 2022, Kevin Pilkerton of PMA-209 announced that the MULE team had successfully built the JET delivered ALF software in VxWorks.

---

[1] Separate actions for breach of an implied-in-fact contract under the Contract Disputes Act of 1978, as amended, 41 U.S.C. §§ 7101-7109 (claim submitted to Government Contracts Officer), and tortious conversion in violation of the Federal Tort Claims Act, 28 U.S.C. § 1346 (administrative claim submitted to the Department of Navy), are being brought against the United States. Plaintiff has also sued JFTI for infringement of copyright, violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, conversion, breach of contract, violation of the Maryland Uniform Trade Secrets Act, Md. Commercial Law Code §§ 11-1202 through 11-1207 (2022), and breach of contract. *See JET v. JFTI*, 8:24-cv-01628 (D. Md. June 5, 2024).

In order to accomplish this build, the PMA-209/MULE team necessarily copied the ALF software. A copy of the September 28, 2022, email from Kevin Pilkerton of PMA-209 is attached as Exhibit M.

33. On information and belief, JFTI copied ALF software ostensibly under JFTI Prime Contract number N00421-22-9-0003, paragraph 2.4.1.10 Reusable Software Products:

> The Performer (JFTI) shall integrate ALF into the MCAP software environment during the modification phase, coordinating with the Government as needed during SETR events. The Performer (JFTI) shall deliver the updated ALF software, with Government Purpose Rights, using DI-IPSC-81488 as guidance (Deliverable D68).

34. The Government in collaboration with JFTI also made the software and its documentation available to other parties, including Precise Systems. Specifically, on information and belief, PMA-209 awarded Support Contract number N0042122R3013 to Secise/Precise around January 10, 2024. In the Statement of Work published by PMA-209, on June 15, 2023, the contract was to be awarded to a contractor having "[d]emonstrated experience with adaptive layer framework." A copy of the relevant contract paragraphs is attached at Exhibit N.

35. On information and belief, Support Contract number N0042122R3013 was withdrawn from Secise/Precise Systems amid allegations of unethical behavior by Secise/Precise Systems.

36. On September 28, 2022, in an email to Peter Allen of JET Systems, Kevin Pilkerton of PMA-209/MULE explained that PMA-209/MULE had ALF products up and running in its lab, including the delivered User Interface Application, and sought help from JET Systems to overcome deficiencies in the installation. A copy of the September 28, 2022, email from Kevin Pilkerton to Peter Allen is attached as Exhibit M.

37. PMA-209 was sufficiently aware of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI, that PMA-209 accepted delivery of ALF software directly from JET, instead of from the Prime contractor JFTI. Despite this awareness, PMA-209 returned its authorized copy of ALF not directly to JET Systems, but rather to JFTI. These facts are admitted in a November 13, 2023, letter from Commander, Naval Air Systems Command to Office of the National Ombudsman, U.S. Small Business Administration, a copy of which is attached as Exhibit O.

38. Consistent with its awareness of JET Systems' interest in protecting its proprietary intellectual property from unauthorized copying, especially by JFTI, PMA-209 instructed JFTI to amend the PO to include direct delivery of ALF Core and SDK to the Government. Matt Campbell of JFTI confirmed this in the email to Scott Jaster dated September 27, 2022, attached as Exhibit F.

39. Even prior to receiving the instructions from PMA-209 regarding delivery of ALF directly to the Government by JET Systems, JFTI had given similar instructions to JET Systems, in a letter dated August 5, 2022. A copy of the August 5, 2022, letter is attached as Exhibit P.

40. In a text message exchange September 6-7, 2022, Jeff Williamson of PMA-209/MULE acknowledged JET Systems' desire to avoid delivery of ALF Software to or through JFTI. The text message exchange of September 6-7 is attached as Exhibit Q.

41. In an email of August 18, 2022, Kim Skidmore of JFTI confirmed and approved that JET Systems would deliver ALF directly to the Government. The August 18, 2022, email is attached as Exhibit R.

## V.     CAUSES OF ACTION

### COUNT I: INFRINGEMENT OF COPYRIGHT

42.     Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-41.

43.     Plaintiff owns a valid copyright in the subject ALF software code.

44.     Plaintiff registered its copyright in the ALF software code with the Register of Copyrights pursuant to 17 U.S.C. § 411(a).

45.     PMA-209, DoN, copied and distributed the ALF software code without Plaintiff's authorization in violation of 17 U.S.C. § 501.

46.     PMA-209, DoN, performed the acts alleged in the course and scope of its business activities.

47.     Plaintiff has been damaged.

48.     The harm caused to Plaintiff is irreparable.

49.     Pursuant to 17 U.S.C. § 504(a)(1) Plaintiff is eligible to receive its actual damages.

50.     Actual damages are measured by "the fair market value of the licensing fees 'the owner was entitled to charge for such use.'" *On Davis v. The Gap, Inc.*, 246 F.3d 152, 165 (2d Cir. 2001) (explaining that "[i]f a copier of protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner … the owner has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for.") Fair market value is often described as "the reasonable licensing fee on which a buyer and a willing seller would have agreed for the use taken by the infringer." *Id.* at 167; *see Jarvis v. K2 Inc.*,

486 F.3d 526, 534 (9th Cir. 2007) (applying standard); *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (noting that the "market value approach is an objective, not a subjective, analysis").

51. However, in the instant case, the infringing Government does not market and sell the infringing work, but instead uses it; thus the "court must determine the 'value of the use' … " *Real View, LLC v. 20-20 Techs., Inc.*, 811 F. Supp. 2d 553, 557 (D. Mass. 2011) (citing *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F. 2d 357, 361-63 (7th Cir. 1985) (allowing for damages based upon the "value of use" of plaintiff's marketing materials "equal to the acquisition cost saved by infringement instead of purchase."))

52. Each of the copies the Government made had a value of use to it equal to the acquisition cost saved by infringement instead of purchase, which the Government was then free to put to other uses. *See Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.*, 542 F. Supp. 252, 262-63 (D. Neb.1982) (awarding fair market value as actual damages for infringement of copyright in architectural plans); *see also Nucor Corp. v. Tennessee Forging Steel Service, Inc.*, 513 F.2d 151, 152-53 (8th Cir.1975) (infringers of plaintiff's common law copyright in architectural plans were liable for fair market value of plans); *Atlantic Monthly Co. v. Post Pub. Co.*, 27 F.2d 556, 560 (D. Mass.1928) (awarding saved acquisition cost as profit made by copyright infringer).

53. "[The foregoing] is simply an application of the general principle that value of use 'amounts to a determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff['s] work.' *Deltak*, 767 F. 2d at 362 (citing *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157,1174 (9th Cir. 1977)).

*54.* Additionally, In determining the hypothetical licensing fee, the Court may consider JET's development costs as a measure of value of a hypothetical license. *See Harris Market Research v. Marshall Mktg. & Commc'ns, Inc.*, 948 F. 2d 1518, 1524 (10th Cir. 1991); *Softel, Inc. v. Dragon Med. & Scientific Commc'ns Ltd.*, 891 F. Supp. 935, 941 (S.D.N.Y. 1995).

## COUNT II: CONTRIBUTORY INFRINGEMENT

55. Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-54.

56. Defendant United States has infringed Plaintiff's copyright in the ALF software contributorily by intentionally inducing or encouraging direct infringement by others, including JFTI. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citing *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F. 2d 1159, 1162 (2d Cir. 1971)).

57. Plaintiff is entitled to an award of actual damages for Defendant's contributory infringement.

## COUNT III: VICARIOUS INFRINGEMENT

58. Plaintiff incorporates herein all allegations contained in the foregoing Paragraphs 1-57.

59. Defendant United States has infringed Plaintiff's copyright in Plaintiff's ALF software vicariously by profiting from direct infringement of others, including JFTI, while declining to exercise a right to stop or limit it. *See Grokster*, 545 U.S. at 930 (citing *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F. 2d 304, 307 (2d Cir. 1963)).

60. Plaintiff is entitled to an award of actual damages for Defendant's vicarious infringement.

WHEREAS Plaintiff prays for the following relief:

- On Count I (Infringement of Copyright),

- Declaratory and injunctive relief;

- Pursuant to 17 U.S.C. § 504, an award of actual damages; and

- Any further relief the Court finds appropriate and just.

On Count II (Contributory Infringement of Copyright),

- Declaratory and injunctive relief;

- Pursuant to 17 U.S.C. § 504, an award of actual damages; and

- Any further relief the Court finds appropriate and just.

On Count III (Vicarious Infringement of Copyright),

- Declaratory and injunctive relief;

- Pursuant to 17 U.S.C. § 504, an award of actual damages; and

- Any further relief the Court finds appropriate and just.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | JET Systems, LLC |
|  | By its attorneys, |
| July 31, 2024, | /s/ Richard S. Toikka |
|  | Richard S. Toikka |
|  | Counsel of Record |
|  | WILT TOIKKA KRAFT, LLP |
|  | 1629 K Street, NW, Suite 300 |
|  | Washington, DC  20006 |
|  | 202-508-3648 (phone) |
|  | 202-521-9803 (fax) |
|  | 240-888-8110 (mobile) |
|  | rtoikka@wtk-law.com (email) |
|  |  |
|  | Russell O. Paige |
|  | Of Counsel |
|  | WILT TOIKKA KRAFT, LLP |
|  | 1629 K Street, NW, Suite 300 |
|  | Washington, DC 20006 |
|  | 202-508-3648 (office) |
|  | 202-521-9803 (fax) |
|  | 703-609-0771 (moblle) |
|  | rpaige@wtk-law.com (email) |
|  |  |
|  | Counsel for Plaintiff JET Systems, LLC |